Filed 5/7/18

# IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, ) | |
| ) | |
| Plaintiff and Appellant, ) | |
| ) | S238354 |
| v. ) | |
| ) | Ct.App. 5 F069020 |
| ALFREDO PEREZ, JR., ) | |
| ) | Fresno County |
| Defendant and Respondent. ) | Super. Ct. No. CF94509578 |
| _____ ) | |

Under the Three Strikes Reform Act of 2012 (Proposition 36), an inmate who has been sentenced under the "Three Strikes" law for a nonserious, nonviolent felony may petition the trial court for resentencing. (Pen. Code, § 1170.126, subd. (f), added by Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012); all statutory references are to the Penal Code.) Upon receiving such a petition, the trial court "shall determine whether the petitioner satisfies the criteria" as listed in the statute. (*Ibid.*) If the criteria are met, "the petitioner shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Ibid.*) This case involves one of the criteria for resentencing eligibility: the inmate must not have been "armed with a . . . deadly weapon" during "the commission of the current offense." (§ 1170.12, subd. (c)(2)(C)(iii) (hereafter § 1170.12(c)(2)(C)(iii).)

SEE CONCURRING OPINION

The trial court determined that defendant Alfredo Perez, Jr., was eligible for resentencing. The Court of Appeal reversed, finding that Perez was armed with a deadly weapon during the commission of his current offense. Here we consider the nature of the inquiry that trial courts and Courts of Appeal should apply when determining whether a defendant is ineligible to be resentenced on the ground that he or she was armed with a deadly weapon during the commission of his or her current offense.

We hold, consistent with our decision in *People v. Frierson* (2017) 4 Cal.5th 225 (*Frierson*), that Proposition 36 permits a trial court to find a defendant was armed with a deadly weapon and is therefore ineligible for resentencing only if the prosecutor proves this basis for ineligibility beyond a reasonable doubt. In addition, we hold that the trial court's eligibility determination may rely on facts not found by a jury; such reliance does not violate the right to a jury trial under the Sixth Amendment to the United States Constitution. A reviewing court, in turn, must defer to the trial court's determination if it is supported by substantial evidence.

In this case, the Court of Appeal was correct to conclude that the trial court's determination of Perez's eligibility for resentencing was not supported by substantial evidence. The evidence in support of Perez's conviction does not reasonably support any inference but that Perez was armed with a deadly weapon during the commission of his current offense.

## I.

On March 17, 1994, Perez and an unidentified person wearing a Pendleton wool-type jacket entered an automotive store in Fresno. Fred Sanchez, a sales clerk in the store, saw the other person pick up a car anti-theft device called a "Club." Perez spoke briefly with Sanchez as the other person left the store and waited by a truck. Perez subsequently left the store, entered the driver's side of

the truck, and drove away. Sanchez suspected that the person had stolen the anti-theft device while Perez was attempting to divert his attention, but Sanchez did not call the police or check whether any items were missing from the store. On the next day, March 18, 1994, Sanchez noticed the person enter the store again. He was wearing the same jacket even though the day was very hot, and he appeared nervous. The person did not purchase anything, and Sanchez followed him as he exited the store and entered the passenger side of the same truck as the day before. Perez was in the driver's seat. Sanchez went to the window of the truck, observed a bulge protruding from the person's clothing, and told the person that he could leave if he returned the stolen merchandise. Sanchez then reached into the truck and grabbed a package from the person's jacket; Sanchez identified the object as the anti-theft device. Sanchez said, "Give it up," and Perez looked toward Sanchez and said, "Give it up."

Perez then drove the truck in reverse while the other person grabbed Sanchez's left arm and pushed it down, preventing Sanchez from pulling his arm out of the truck. Sanchez yelled, "Stop the vehicle," three times as he was dragged, and he tried to run to maintain balance as the truck moved in reverse. Perez then drove the truck forward, at which point Sanchez pulled his arm free; Sanchez thought he was going to be rolled under the tires and killed. Sanchez suffered a few scrapes but no injury warranting serious medical attention. Perez and the other person left the scene. A witness, Sanchez's co-worker, told the police that he saw Sanchez being dragged and "running for his life." Sanchez originally testified at a preliminary hearing that the truck started at 10 miles per hour and accelerated to around 15 miles per hour when he pulled his arm free, but he later estimated at trial that the speed was 20 miles per hour. Perez estimated the speed was one mile per hour in reverse and two or three miles per hour forward. Perez testified that he had not been at the store on the first day and that

3

on the second day, he had been asked by a friend to give the unidentified person a ride to the store. Perez said that in moving the truck while Sanchez's arm was inside, he was only trying to escape because he thought Sanchez, whom he did not know was a store employee, was trying to rob the person. The parties do not dispute that Perez's movement of the truck backward and forward had the potential to seriously injure Sanchez.

Perez was charged with assault by means of force likely to produce great bodily injury under former section 245 and for robbery under section 211; he was not charged with assault with a deadly weapon. On April 4, 1995, a jury convicted Perez under former section 245, subdivision (a)(1) for the crime of "[a]ssault by means of [f]orce likely to produce [great bodily injury]." Because Perez had two prior strike offenses, he was sentenced to an indeterminate term of 25 years to life plus two one-year enhancements under section 667.5, subdivision (b).

On August 16, 2013, after passage of Proposition 36, Perez petitioned the trial court for a recall of sentence and a new sentencing hearing pursuant to section 1170.126. The district attorney opposed the petition on the ground that Perez had been armed with a deadly weapon during the commission of his current offense. The trial court found that Perez was not statutorily ineligible for resentencing on that ground. The court found it "significant[]" that "the case was not charged or convicted as assault with a motor vehicle. It was charged as force likely [to produce great bodily injury]." "The incidental use of the motor vehicle during the offense," the court said, did not make Perez statutorily ineligible for resentencing. Moreover, the trial court opined that the voters who enacted Proposition 36 were "informed that an individual would not be eligible [for resentencing] if the offense involved use of a firearm" but were not told that " 'if an individual uses something that is not in and of itself a deadly -- for that purpose a deadly weapon, that they would not be eligible.' "

4

The Court of Appeal reversed. (*People v. Perez* (2016) 3 Cal.App.5th 812, 816 (*Perez*).) The court observed that a deadly weapon under section 245, subdivision (a) is " ' "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." ' " (*Perez*, at p. 824, quoting *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028–1029 (*Aguilar*).) The court then reasoned that because the jury, by its verdict, necessarily found that Perez used force likely to produce great bodily injury when he assaulted Sanchez, and because the vehicle was the sole means by which Perez applied this force, the record of conviction establishes that Perez used the vehicle as a deadly weapon. (*Perez*, at p. 825.) Justice Franson dissented on the ground that the trial court's finding that Perez did not use the vehicle as a deadly weapon was supported by substantial evidence and did not contradict the jury's verdict. (*Id.* at pp. 835–837 (dis. opn. of Franson, J.).)

We granted review.

## II.

The Three Strikes law was enacted in 1994 "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (Former § 667, subd. (b), as amended by Stats. 1994, ch. 12, § 1, p. 72.) Under the law, defendants who commit a felony after two or more prior convictions for serious or violent felonies were sentenced to "an indeterminate term of life imprisonment with a minimum term of" at least 25 years. (Former § 1170.12, subd. (c)(2)(A), added by Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994).) In 2012, Proposition 36 narrowed the class of third-strike felonies for which an indeterminate sentence could be imposed. Now a defendant convicted of a felony outside of that class can receive at most a sentence enhancement of twice the term otherwise provided as punishment for that felony. (§ 1170.12, subd. (c)(2)(C); see

5

*People v. Conley* (2016) 63 Cal.4th 646, 652.)  But Proposition 36 makes a defendant ineligible for this limitation on third-strike sentencing if one of various grounds for ineligibility applies.  (§ 1170.12, subd. (c)(2)(C).)  One of those grounds is that "[d]uring the commission of the current offense, the defendant . . . was armed with a . . . deadly weapon . . . ."  (§ 1170.12(c)(2)(C)(iii).)

Proposition 36 also authorizes an inmate currently serving an indeterminate term under the original Three Strikes law to petition the trial court for resentencing.  (§ 1170.126, subds. (a), (b).)  Upon receiving such a petition, the trial court "shall determine whether the petitioner satisfies the criteria" for resentencing eligibility, including whether the petitioner's third-strike offense was neither serious nor violent.  (§ 1170.126, subds. (e), (f).)  If the petitioner is found eligible for resentencing, he or she "shall be resentenced pursuant to [Proposition 36] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  As with defendants to be prospectively sentenced for a third-strike offense, an already sentenced inmate whose third strike was a nonserious, nonviolent felony and who otherwise satisfies the criteria for resentencing is nonetheless ineligible for resentencing if his or her current sentence was imposed for an offense during which he or she "was armed with a . . . deadly weapon." (§§ 1170.12(c)(2)(C)(iii), 1170.126, subd. (e)(2).)

Proposition 36 does not specify how the trial court is to determine whether a given criterion for resentencing ineligibility, such as whether the inmate was armed with a deadly weapon during his or her current offense, has been satisfied. We recently clarified that once an inmate has made an initial showing of eligibility for resentencing, the burden is on the prosecution to prove beyond a reasonable doubt that one of the grounds for ineligibility applies.  (*Frierson*, *supra*, 4 Cal.5th at p. 230.)  In this case, it was the prosecution's burden to prove beyond a

6

reasonable doubt that Perez was "armed with a . . . deadly weapon" within the meaning of section 1170.12(c)(2)(C)(iii) during the commission of his aggravated assault against Sanchez.

At the time of Perez's offense, a defendant could be convicted of aggravated assault for "an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." (Former § 245, subd. (a)(1), as amended by Stats. 1993, ch. 369, § 1, p. 2168.) A judgment of conviction specifying that a defendant was convicted for "an assault upon the person of another with a deadly weapon" is undoubtedly sufficient to show that the defendant was armed with a deadly weapon during the commission of the offense and is therefore ineligible for resentencing. But Perez was convicted of aggravated assault upon proof that he committed "an assault . . . by means of force likely to produce great bodily injury." The jury was not asked to explicitly find that Perez was armed with a deadly weapon.

Perez contends that the Sixth Amendment to the United States Constitution prohibits a trial court from determining that an inmate is ineligible for resentencing based on a fact not found by a jury beyond a reasonable doubt. In *People v. Estrada* (2017) 3 Cal.5th 661, 672, we held that Proposition 36 permits a trial court to examine facts beyond the judgment of conviction in determining whether a resentencing ineligibility criterion applies. In reaching that statutory holding, we did not address any Sixth Amendment concern. (See *Estrada*, at p. 668.) We now hold that the Sixth Amendment does not bar a trial court from considering facts not found by a jury beyond a reasonable doubt when determining the applicability of a resentencing ineligibility criterion under Proposition 36.

Under the Sixth Amendment, any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the statutory maximum

7

must be submitted to a jury and proved beyond a reasonable doubt. (*Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348]; see *Alleyne v. United States* (2013) 570 U.S. 99 [133 S.Ct. 2151] [same rule for any fact that increases the mandatory minimum penalty for a crime].) In *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*), the high court held that this rule, as interpreted in *United States v. Booker* (2005) 543 U.S. 200, does not apply to a federal sentence modification scheme that authorizes district courts to reduce otherwise final sentences when the United States Sentencing Commission has revised sentencing guidelines downward and has made those revisions retroactive. (18 U.S.C. § 3582(c)(2); see *Dillon*, at pp. 820–822 [describing the scheme].) *Dillon* explained: "We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines. [¶] Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range. . . . Because § 3582(c)(2) proceedings give judges no more than this circumscribed discretion, '[t]here is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused.' [Citation.]" (*Dillon*, at pp. 828–829.)

Proposition 36's resentencing scheme, though different in various ways from the sentence modification scheme at issue in *Dillon*, is also an enactment intended to give inmates serving otherwise final sentences the benefit of

8

ameliorative changes to applicable sentencing laws. Perez contends that the Proposition 36 scheme is materially different because it *requires* trial courts to resentence a petitioner when the statutory criteria are met. In his view, any factual finding that makes an inmate ineligible for resentencing is a factual finding that deprives him of a statutory entitlement to a reduced sentence and thus effectively increases his minimum sentence. But this contention fails at the outset because it misreads Proposition 36.

Proposition 36 provides that if a petitioner satisfies the resentencing eligibility criteria, then "the petitioner shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) By its terms, the statute does not create an entitlement to resentencing; the finding of a fact that renders a petitioner ineligible for resentencing deprives him or her of an opportunity to have the trial court make a discretionary determination as to whether he or she should be resentenced. Moreover, Proposition 36 does not automatically reduce, recall, or vacate any sentence by operation of law. It is up to the inmate to petition for recall of the sentence, and at all times prior to the trial court's resentencing determination, the petitioner's original third-strike sentence remains in effect. Under this scheme, a factual finding that results in resentencing ineligibility does not increase the petitioner's sentence; it simply leaves the original sentence intact. We hold that the Sixth Amendment does not prohibit trial courts from relying on facts not found by a jury in determining the applicability of Proposition 36's resentencing ineligibility criteria. (Accord, *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1059–1062; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 805; *People v. Guilford* (2014) 228 Cal.App.4th 651, 662–663; *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1334–1336 (*Bradford*).)

9

## III.

In this case, the Court of Appeal reversed the trial court's determination that the evidence at trial did not show Perez was "armed with a . . . deadly weapon" within the meaning of section 1170.12(c)(2)(C)(iii). Perez contends that the trial court's determination was supported by substantial evidence and that the Court of Appeal erred by substituting its own view of the facts.

The parties do not dispute that the term "armed" means having a "weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997, italics omitted.) In addition, our precedent makes clear that a "deadly weapon" under section 245, subdivision (a)(1) is " 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*Aguilar*, *supra*, 16 Cal.4th at pp. 1028–1029.) A similar definition of "deadly weapon" long predated *Aguilar*. (See, e.g., *People v. Leyba* (1887) 74 Cal. 407, 408; *People v. Fuqua* (1881) 58 Cal. 245, 247 [defining a "deadly weapon" as "one likely to produce death or great bodily injury"].) We see no reason why the term "deadly weapon" would mean anything different in section 1170.12(c)(2)(C)(iii) than what it means in section 245, subdivision (a). (See *Bradford*, *supra*, 227 Cal.App.4th at pp. 1341–1342.)

In *Aguilar*, we held that only objects "extrinsic to the body" can qualify as deadly weapons; a defendant's hands, feet, or other body parts cannot be deadly weapons within the meaning of section 245. (*Aguilar*, *supra*, 16 Cal.4th at p. 1027; *id.* at p. 1026.) Several cases have recognized a vehicle as a deadly weapon based on the manner it was used. (See, e.g., *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 6 [defendant drove a car at two police officers]; *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1183 [defendant raced through a red light at a busy intersection and collided with another vehicle]; *People v. Russell* (2005) 129 Cal.App.4th 776, 787 [defendant pushed the victim into the path of an approaching car].)

Perez argues that an object cannot be a deadly weapon unless the defendant intended to use the instrument as a weapon and not for some other purpose. But assault with a deadly weapon is a general intent crime; the required mens rea is "an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).) Whether an object is a deadly weapon under section 245 does not turn on whether the defendant intended it to be used as a deadly weapon; a finding that he or she willfully used the object in a manner that he or she knew would probably and directly result in physical force against another is sufficient to establish the required mens rea.

The Court of Appeal correctly observed that the trial court's eligibility determination, to the extent it was "based on the evidence found in the record of conviction," is a factual determination reviewed on appeal for substantial evidence. (*Perez*, *supra*, 3 Cal.App.5th at pp. 821–822.) That is, the reviewing court must determine if there was sufficient evidence for the trial court to conclude that the prosecutor did not prove that the petitioner is ineligible for resentencing

11

beyond a reasonable doubt. Under this standard, the burden remains on the prosecutor to demonstrate the petitioner's ineligibility (*Frierson*, *supra*, 4 Cal.5th at p. 230); the burden never shifts to the petitioner, either in the trial court or on appeal, to provide any evidence once he or she has made an initial showing of eligibility. Further, the reviewing court does not reweigh the evidence; appellate review is limited to considering whether the trial court's finding of a reasonable doubt is supportable in light of the evidence. The district attorney argues that de novo review is more appropriate because trial courts do not have an advantage over appellate courts in determining eligibility based on the record of conviction. But even if the trial court is bound by and relies solely on the record of conviction to determine eligibility, the question whether a defendant was armed with a deadly weapon during his or her current offense remains a question of fact, and we see no reason to withhold the deference generally afforded to such factual findings.

Applying this deferential standard, the Court of Appeal also correctly concluded that the trial court's determination of Perez's eligibility for resentencing is not supported by substantial evidence. As the Court of Appeal explained: "When the jury convicted [Perez] of assault by means of force likely to produce great bodily injury, they necessarily found the force used by [Perez] in assaulting Sanchez, the victim, was likely to produce great bodily injury. [Citation.] The sole means by which [Perez] applied this force was the vehicle he was driving. Thus, the record of conviction establishes [Perez] used the vehicle in a manner capable of producing, and likely to produce, at a minimum great bodily injury— i.e., as a deadly weapon. [Citations.]" (*Perez*, *supra*, 3 Cal.App.5th at p. 825.)

Perez argues that the jury instruction in this case preceded *Williams* and allowed the jury to convict him of assault with a deadly weapon without finding that he was aware that his use of the truck would probably and directly result in physical force against Sanchez. But as in *Williams*, although the instruction

conceivably could have permitted a conviction of aggravated assault without actual knowledge, it was undisputed that Perez did have such knowledge. The evidence indicates that Sanchez's arm was inside the truck when Perez said, "Give it up," Sanchez shouted, "Stop the vehicle," and Perez continued to drive despite Sanchez's entreaty. Perez therefore had actual knowledge of facts establishing that driving the truck would probably and directly result in applying force against Sanchez. Any ambiguity in the instruction was harmless beyond a reasonable doubt. (See *Williams*, *supra*, 26 Cal.4th at p. 790.) That the jury found that the force was likely to produce great bodily injury was in turn sufficient for a conviction of aggravated assault.

The trial court noted that Perez was charged with aggravated assault based on his use of force likely to produce great bodily injury and not on his use of a deadly weapon, and it was in this context that the trial court said Perez's use of the vehicle during the offense was "incidental." To be sure, there is room to question Sanchez's testimony as to the speed of the truck, and one could reasonably view the evidence as showing that Perez moved the truck "not to inflict injury but to provide a means of escape." (*Perez*, *supra*, 3 Cal.App.5th at p. 829 (conc. opn. of Poochigian, Acting P. J.); *id.* at p. 829, fn. 1; see *id.* at pp. 835–836 & fn. 5 (dis. opn. of Franson, J.).) But Perez's specific intent when he moved the car is immaterial, and there is no dispute that Perez willfully continued to move the car even as Sanchez three times yelled, "Stop the vehicle," as his arm was stuck inside the car. Most importantly, the record contains no evidence of any force employed by Perez *other than the force of the moving vehicle* that could account for the jury's verdict that Perez committed an assault by "means of force likely to produce great bodily injury." (Former § 245, subd. (a)(1), as amended by Stats. 1993, ch. 369, § 1, p. 2168.) The evidence does not reasonably support any inference but that Perez used the vehicle " 'in such a manner as to be capable of producing

13

and likely to produce . . . great bodily injury' " — i.e., that Perez used the vehicle as a deadly weapon. (*Aguilar*, *supra*, 16 Cal.4th at pp. 1028–1029.)

The trial court also expressed doubt as to whether the voters who enacted Proposition 36 intended the term "deadly weapon" in section 1170.12(c)(2)(C)(iii) to include objects that, unlike firearms, are not inherently deadly weapons. To the extent that the trial court was interpreting the meaning of the statute, we independently review the trial court's determination and reject its interpretation of section 1170.12(c)(2)(C)(iii). We presume the electorate, when it enacts an initiative, is " 'aware of existing laws and judicial construction thereof.' " (*People v. Gonzales* (2017) 2 Cal.5th 858, 869.) Our decision in *Aguilar*, which defined "deadly weapon" to include objects used in a manner capable of producing and likely to produce great bodily injury, was filed in 1997, long before the enactment of Proposition 36.

We caution that our reasoning in light of the facts here does not establish a categorical rule that a defendant is armed with a deadly weapon within the meaning of section 1170.12(c)(2)(C)(iii) whenever he or she uses an object in the course of committing an assault by means of force likely to produce great bodily injury. Factors such as the application of multiple forces or the use of multiple objects could raise a reasonable doubt about whether the defendant was armed with a deadly weapon during the commission of an aggravated assault. In this case, the record shows beyond a reasonable doubt that Perez used the vehicle as a deadly weapon; there is no substantial evidence to the contrary.

14

## CONCLUSION

We affirm the judgment of the Court of Appeal.


**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**STREETER, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY CORRIGAN, J.**

I concur in the majority's holding that "the Sixth Amendment does not bar a trial court from considering facts not found by a jury beyond a reasonable doubt when determining the applicability of a resentencing ineligibility criterion under Proposition 36." (Maj. opn., *ante*, at p. 7.) I also concur in the majority's holding that defendant was ineligible for resentencing because he was "armed with a . . . deadly weapon" during "the commission of the current offense." (Pen. Code,[1] § 1170.12, subd. (c)(2)(C)(iii); maj. opn., *ante*, at pp. 6, 10–14.) I write separately to urge that a different analytical approach is appropriate to resolve the second holding. Specifically, on the record before us, the trial court's finding of eligibility is a question of law subject to de novo review.

The relevant facts here are undisputed. (See maj. opn., *ante*, at pp. 2–4.) The trial court found that defendant had not used his vehicle in a dangerous manner as to constitute a deadly weapon, and therefore could not be said to have been armed with such a weapon, because his vehicle use was only " 'incidental' " to the offense. (Maj. opn., *ante*, at p. 4.) The Court of Appeal rejected that reasoning.[2] It is true that the Court of Appeal characterized the question as a

---

[1]    Statutory references are to the Penal Code.
[2]    The Court of Appeal observed: "It has long been the law that '[a] person is "armed" with a deadly weapon when he simply carries a weapon or has it available for use in either offense or defense. [Citation.]' [Citations.] Here, because defendant personally used the vehicle as a deadly weapon, he necessarily

factual one and applied the substantial evidence test. (*Perez*, *supra*, 3 Cal.App.5th at p. 825.) Defendant treats review in the same way. But closer examination indicates the question, on this record, is one of law, not fact.

We clarified in *People v. Frierson* (2017) 4 Cal.5th 225 that, once a defendant meets his initial burden to show he is facially eligible for resentencing under section 1170.126, he shall be resentenced unless the prosecution proves beyond a reasonable doubt that he is *ineligible*. (*Frierson*, at pp. 235–240.) If the trial court concludes the prosecution has failed to meet its burden, an eligible defendant must be resentenced.**3**

This case is complicated by the fact that neither the trial court nor the Court of Appeal had the benefit of our *Frierson* decision. The Court of Appeal reversed the trial court's finding of eligibility, concluding no substantial evidence supported this finding: "Even under the deferential substantial evidence standard of review, the record of conviction does not support the trial court's contrary findings that defendant's use of the vehicle during the offense was merely 'incidental,' or that Sanchez was 'dragged slightly, though the dragging wasn't anything more than keeping pace with the car.' The vehicle was the instrumentality by which defendant committed the offense, and whatever speed defendant was driving, Sanchez was dragged and had to run to keep his balance to such an extent that a witness characterized Sanchez as ' "running for his life" ' and expressed surprise Sanchez was able to run that fast." (*Perez*, *supra*, 3 Cal.App.5th at p. 825.) The majority endorses the Court of Appeal's reasoning (see maj. opn., *ante*, at pp. 11–

---

had it available for use and so was armed with it during the commission of his current offense, since 'use' subsumes 'arming.' [Citations.]" (*People v. Perez* (2016) 3 Cal.App.5th 812, 827 (*Perez*).)

**3** An eligible defendant may be denied resentencing if the court, "in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

12) and concludes that "the record shows beyond a reasonable doubt that Perez used the vehicle as a deadly weapon; there is no substantial evidence to the contrary" (*id*. at p. 14).

The substantial evidence standard of review asks whether an affirmative factual finding is supported by " ' "evidence which is reasonable, credible, and of solid value." ' " (*People v. Clark* (2011) 52 Cal.4th 856, 942.) If the trial court had found the People's evidence satisfied their burden because it found an ineligibility factor proven beyond a reasonable doubt, a defendant could challenge that affirmative finding on appeal and the substantial evidence standard would apply.

By contrast, when the trial court concludes the prosecution has *failed* to meet its burden to prove ineligibility, the People may argue on appeal that the trial court made an error of law. Here, the People claim that a *legal* error required reversal of the court's eligibility finding because the trial court reconsidered a factual question already resolved by the jury. This appears to be an assertion of issue preclusion, the existence of which constitutes a legal question. (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 895, fn. 24; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [requirements for collateral estoppel].)

Although the majority couches its review in terms of "substantial evidence" (maj. opn., *ante*, at p. 2), its ultimate conclusion appears to be that the undisputed facts show *as a matter of law* that defendant was armed with a deadly weapon during the commission of the offense (*id*. at p. 12). The majority embraces the Court of Appeal's reasoning that the jury necessarily found the force used by defendant in assaulting the victim was likely to produce great bodily injury, and that force was solely applied by the vehicle defendant was driving. (*Id*. at p. 12) Thus, " 'the record of conviction establishes [Perez] used the vehicle in a manner capable of producing, and likely to produce, at a minimum great bodily injury—

3

i.e., as a deadly weapon.  [Citations.]' "  (*Ibid*., quoting *Perez*, *supra*, 3 Cal.App.5th at p. 825.)

With this clarification, I join the majority's affirmance of the Court of Appeal's judgment.


**CORRIGAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Perez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 3 Cal.App.5th 812
**Rehearing Granted**

_____

**Opinion No.** S238354
**Date Filed:** May 7, 2018

_____

**Court:** Superior
**County:** Fresno
**Judge:** Jonathan B. Conklin

_____

**Counsel:**

Elizabeth A. Egan and Lisa A. Smittcamp, District Attorneys, Rudy Carillo and Traci Fritzler, Chief Deputy District Attorneys, and Douglas O. Treisman, Deputy District Attorney, for Plaintiff and Appellant.

Elizabeth Campbell, under appointment by the Supreme Court, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Douglas O. Treisman
Deputy District Attorney
3333 East American Avenue, Suite F
Fresno, CA  93725
(559) 600-4923

Elizabeth Campbell
PMB 334
3104 O Street
Sacramento, CA 95816
(530) 786-4108