Filed 3/27/23  P. v. Bradish CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C094772 |
| Plaintiff and Respondent, | (Super. Ct. No. CM015924) |
| v. | |
| DONALD JENE BRADISH, | |
| Defendant and Appellant. | |

Defendant Donald Jene Bradish and another man, Morgan John Andrews, broke into Carl O'Shea's apartment while attempting to rob the attached motel office.  Andrews then shot and killed O'Shea.  A jury found defendant guilty of first degree murder, attempted robbery, and first degree burglary.  Defendant later filed a petition for

1

resenting under former Penal Code[1] section 1170.95 (now section 1172.6).[2] After issuing an order to show cause and receiving evidence from the parties, the trial court denied defendant's petition.

On appeal, defendant contends the trial court erroneously found that he acted with reckless indifference to human life. We conclude substantial evidence supports the trial court's finding. We shall therefore affirm the order denying defendant's petition.

BACKGROUND

*A.    The Murder*

In accordance with the standard of review, we recite the facts underlying defendant's convictions in the light most favorable to the judgment. (See *People v. Edwards* (2013) 57 Cal.4th 658, 715.)

One evening, defendant and Andrews visited defendant's friend, Christian Romeo, for the purpose of asking to borrow Romeo's sawed-off, pump-action shotgun. Romeo handed the gun to defendant, who made sure it was loaded. Defendant then put the gun in a bag, which was also provided by Romeo, and left with Andrews in a hurry.

Defendant and Andrews went to the Rio Lindo Motel. At some point before entering the motel office, Andrews took the shotgun from defendant. O'Shea and his fiancée, Camille H., managed the motel and lived in an apartment attached to the office. They were watching television in their bedroom when they heard the bell indicating someone had entered the motel office. Camille H. walked out of the bedroom through the living room and opened the door to the office. Defendant and Andrews were standing in the office. Andrews immediately pumped the shotgun, chambering a round.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

Camille H. turned back into the apartment, shut the door, and sat down on a recliner with her hands up. She could still watch the men through the lattice of the door. Andrews came up to the apartment door, broke it open without saying anything, and entered the living room. Defendant followed Andrews to the apartment door and stood in the doorway, blocking Camille H.'s exit.

As Andrews entered the living room, O'Shea also entered from the bedroom. Andrews quickly approached O'Shea, who grabbed the gun but then fell to the ground. Andrews put the butt of the gun into O'Shea's back and told him to stay down. Undeterred, O'Shea got back up and grabbed the gun again. The two struggled for a few seconds. The gun then discharged, with the ammunition striking O'Shea's head immediately killing him. The entire struggle over the gun lasted less than one minute. Defendant did not say anything during these events and did not attempt to intervene in any way.

Defendant and Andrews immediately fled, leaving untouched the cash drawer in the office with $300 inside. They hid the shotgun under a storage container behind a nearby bowling alley. They then went to defendant's apartment, where they showered, and later disposed of their blood-stained clothing.

The jury found defendant guilty of first degree murder, attempted robbery, and first degree burglary. The jury also found true special circumstance allegations that the murder was committed while defendant was engaged in the commission of a burglary and the attempted commission of a robbery. Defendant waived his right to appeal his convictions in return for the prosecution agreeing to dismiss the special circumstances. The trial court sentenced defendant to an indeterminate term of 25 years to life in prison for murder, plus a total of nine years in prison for attempted robbery and burglary, with the nine-year term stayed pursuant to section 654.

*B.      Senate Bill No. 1437 and Defendant's Resentencing Petition*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) amended sections 188 and 189 to restrict the application of the felony-murder rule and the natural and probable consequences doctrine. As amended, section 188, subdivision (a)(3) provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Section 189, subdivision (e), as amended, limits murder liability based on participation in a felony to a person who: (1) was the actual killer; (2) although not the actual killer, intended to kill and aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of first degree murder; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e).) Senate Bill No. 1437 also added former section 1170.95 (now section 1172.6), creating a procedure for those convicted of murder to seek resentencing if they could no longer be convicted of murder under the new law. (Stats. 2018, ch. 1015, § 4.)

Defendant filed a resentencing petition alleging that he could no longer be convicted of first degree murder under the current version of section 189 because he was not the actual killer, he did not aid or abet the killing with the intent to kill, and he did not act with reckless indifference to human life during the course of the burglary and attempted robbery. The trial court issued an order to show cause why defendant's petition should not be granted and held an evidentiary hearing. The trial court reviewed the record of defendant's trial in addition to evidence offered by the prosecution at the hearing. The court heard argument from both parties, took the matter under submission, and then issued a written order denying defendant's petition. The court found that the prosecution had proved beyond a reasonable doubt that defendant either directly aided and abetted Andrews in the killing or was a major participant in the burglary and

4

attempted robbery and had acted with reckless indifference to human life. Defendant timely appealed that order.

## DISCUSSION

The People do not pursue the trial court's alternative finding that defendant directly aided and abetted Andrews in the killing, and defendant concedes that he was a major participant in the robbery so only the reckless indifference to human life requirement is at issue here. Defendant contends we should independently review the trial court's finding and, under any standard, the trial court erred in finding defendant acted with reckless indifference to human life. The People contend substantial evidence supports the trial court's finding. We agree with the People.

### A.    *Standard of Review*

We review the trial court's determination that defendant is ineligible for resentencing under section 1172.6 under the substantial evidence standard because it was based on a factual determination that defendant acted with reckless indifference to human life. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1066.) Defendant argues that we should not follow the general rule of deference to the trial court's factual findings because they were "derived purely from a cold documentary record." This is precisely the argument our Supreme Court rejected in *Perez* with regards to a different resentencing statute. (*Ibid.* ["eligibility determination, to the extent it was 'based on the evidence found in the record of conviction,' is a factual determination reviewed on appeal for substantial evidence"].) Likewise, every court to consider the issue with respect to section 1172.6 has rejected the defendant's argument that the statute presents a special situation warranting independent review. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298-299, 302 [reviewing finding that the defendant acted with knowledge of danger to and conscious disregard for victim's life]; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951-955 [same]; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 229-230, 233

5

[reviewing finding that the defendant knew or should have known that victim was a peace officer engaged in performance of his duties].)

Under the substantial evidence standard, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence— that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards*, *supra*, 57 Cal.4th at p. 715; see *People v. Vargas*, *supra*, 84 Cal.App.5th at p. 951.) Substantial evidence also " 'includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57; see *Vargas*, at p. 951.) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 298.)

B.      *Reckless Indifference to Human Life*

Under section 1172.6, a defendant is ineligible for resentencing if the prosecution proves beyond a reasonable doubt that the defendant "is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The current version of section 189 makes a person liable for murder if the person "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) The

6

requirements of being a major participant and acting with reckless indifference " 'significantly overlap . . . in general, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*People v. Clark* (2016) 63 Cal.4th 522, 615 (*Clark*).)

Recognizing the overlap between the major participant and reckless indifference elements, our high court has considered the following list of nonexclusive factors in determining whether a defendant acted with reckless indifference to human life: (1) a defendant's knowledge of weapons, and the use and number of those weapons; (2) a defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) a defendant's knowledge of the cohort's likelihood of killing; and (5) a defendant's efforts to minimize the risks of the violence during the felony. (*Clark*, *supra*, 63 Cal.4th at pp. 618-623.) No one factor is required or dispositive. (*Id.* at p. 618.)

Given the standard of review, the ultimate question we must answer is whether any reasonable fact finder could find beyond a reasonable doubt that: (1) defendant was " 'aware of and willingly involved in the violent manner in which the particular offense [wa]s committed' "; (2) he consciously disregarded the significant risk of death; and (3) his disregard for the risks he perceived in the situation " ' "involve[d] a gross deviation from the standard of conduct that a law-abiding person would observe" ' " in his situation. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

We conclude that substantial evidence supports the trial court's finding beyond a reasonable doubt that defendant acted with reckless indifference to human life, especially given defendant's significant level of participation in the burglary and attempted robbery. (See *Clark*, *supra*, 63 Cal.4th at p. 615 [being major participant in felony murder provides " 'significant support' " for finding that the defendant acted with reckless indifference to human life].) Defendant obtained the shotgun, ensured the shotgun was loaded, and never unloaded it. Defendant never told Andrews not to use the shotgun, nor

7

did defendant attempt to take the weapon back. Defendant contends this was a robbery of a business, not a riskier home invasion; but defendant did not attempt to steal the money in the office when Camille H. left it undefended and retreated into the apartment with her hands up. Nor did defendant try to redirect Andrews after Andrews responded to Camille H.'s appearance by pumping the shotgun to chamber a shell, rendering the gun ready to fire immediately. Defendant did not balk or try to convince Andrews to focus on the office or abort the robbery when Andrews began breaking down the door to the victim's apartment, despite the increased risk the residents might defend their home. Rather, defendant followed Andrews and stood in the doorway, blocking exit from the apartment. Defendant did not try to stop Andrews when the victim resisted and fell or when Andrews forced the victim to the ground with the butt of the gun. Given all of these circumstances, we cannot say that no rational fact finder would find that defendant acted with reckless indifference to human life.

Defendant refers to our Supreme Court's caution that defendants " 'who simply had awareness their confederates were armed and armed robberies carried a risk of death, lack the requisite reckless indifference to human life.' " (*Clark*, *supra*, 63 Cal.4th at p. 618.) This is not such a case, nor are the cases defendant cites comparable. In *In re Taylor* (2019) 34 Cal.App.5th 543, the defendant planned an after-hours robbery; did not supply the gun, served as the getaway driver, stayed in the car, could not see the shooting, and left the scene only when he saw help was coming. (*Id.* at pp. 557-559; see *People v. Douglas* (2020) 56 Cal.App.5th 1, 11.) In *People v. Ramirez* (2021) 71 Cal.App.5th 970, the defendant did not plan the carjacking, did not supply the gun, had reason to believe violence was unlikely, and had no opportunity to prevent violence when the shooter suddenly began firing. (*Id.* at pp. 988-990.) In *In re Moore* (2021) 68 Cal.App.5th 434, the defendant did not supply the gun, never left the car, and had no opportunity to prevent his codefendant's sudden, unprovoked shooting of one of the robbery victims in a parking lot full of witnesses. (*Id.* at pp. 452-453.)

In contrast to these three cases, defendant obtained the shotgun and ensured it was loaded, entered the office only a few feet behind Andrews, blocked exit from the apartment, and had repeated opportunities to deescalate the situation. At the very least, defendant's actions demonstrate reckless indifference to the increased risk of death caused by Andrews's conduct. These distinctions highlight the substantial evidence that supports the trial court's finding.

Also instructive is *In re McDowell* (2020) 55 Cal.App.5th 999. There, McDowell and Hutchison planned and executed a home invasion robbery of a drug dealer, Meehan. (*Id.* at pp. 1005, 1006.) McDowell was armed with a knife and Hutchison was armed with a handgun when they entered Meehan's home and demanded money and/or drugs. (*Id.* at p. 1005.) When Meehan said he did not have anything, Hutchison fired a warning shot into the floor. (*Ibid.*) Meehan then told Hutchison to go ahead and kill him. (*Ibid.*) Two guests were also at Meehan's home at the time. (*Ibid.*) One of them told Hutchison not to hurt Meehan, while the other picked up an object and struck McDowell, knocking him down. (*Ibid.*) Meehan then tried to grab Hutchison's gun, causing Hutchison to shoot him twice in the chest. (*Ibid.*) Concluding the evidence supported a finding that McDowell acted with reckless indifference to human life, the court first accepted McDowell's statement that he did not know Hutchison had a gun, but pointed out McDowell himself was armed with a knife, and he necessarily knew Hutchison had a gun at least by the time the warning shot was fired. (*Id.* at p. 1013.) The court also emphasized that McDowell both planned and actively participated in "a crime with a particularly high risk of violence—a home invasion robbery of a drug dealer." (*Ibid.*) The court further found McDowell took no steps to minimize the "obvious risks of lethal violence" such a plan entailed. (*Id.* at pp. 1013-1014.) Finally, the court also relied on McDowell's presence at the scene of the murder and failure to take any steps to prevent it. Specifically, when Hutchison fired the warning shot and Meehan responded with a

9

dare, "there was a brief but critical opportunity for McDowell to say or do something to deescalate the situation," but he did not. (*Id.* at p. 1014.)

Like McDowell, defendant here participated in an attempted home invasion robbery, and his confederate shot and killed a resisting inhabitant. But McDowell did not know his confederate brought a gun, whereas defendant provided the shotgun to Andrews and ensured it was loaded. Most significantly, while McDowell failed to take one "brief but critical" opportunity to say or do something to deescalate the situation, defendant passed up multiple such opportunities. Defendant thus acted more recklessly than McDowell and with greater awareness of the potential risk of death, which further supports our conclusion that substantial evidence supports the trial court's finding that defendant acted with reckless indifference to human life.

Defendant also contends, "[t]he superior court's failure to address a factor as important as appellant's youth is reversible error on its own," but defendant did not raise this issue in the trial court, other than informing the court that defendant was "barely 20 years of age" at the time of the murder. A defendant's youth is one of many factors to be considered when weighing the totality of the circumstances. (*In re Harper* (2022) 76 Cal.App.5th 450, 470.) Defendant cannot fairly contend the trial court failed to consider his youth when defendant never asked the trial court to do so. (See *People v. Tully* (2012) 54 Cal.4th 952, 980 [" '[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct' "].) Nor does evidence that defendant was 20 years old at the time of the murder cancel out the substantial evidence we have already identified supporting the trial court's finding. "Once such evidence is found, the substantial evidence test is satisfied. [Citation.] Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) Thus, evidence of defendant's age does not affect our conclusion that substantial

10

evidence supports the trial court's finding, based on the totality of the circumstances, that defendant acted with reckless indifference to human life.

## DISPOSITION

The order denying defendant's resentencing petition is affirmed.


                                    /s/
                                    BOULWARE EURIE, J.



We concur:



      /s/
ROBIE, Acting P. J.



      /s/
DUARTE, J.

11