Filed 10/31/25  P. v. VanBlarcom CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON SCOTT VANBLARCOM,<br><br>    Defendant and Appellant. | D084297<br><br><br>(Super. Ct. No. FSB17003759) |

APPEAL from an order of the Superior Court of San Bernardino, Michael A. Smith, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz Olukoya, Deputy Attorneys General, for Plaintiff and Respondent.

Jason Scott VanBlarcom bludgeoned a man to death with a birdbath. The People charged him with murder, and he subsequently pled guilty to voluntary manslaughter.  As part of the plea, he admitted that he personally used a deadly weapon and that he had three prison priors.  VanBlarcom agreed to a stipulated term of 15 years in prison.

In a subsequent petition for resentencing under Penal Code[1] section 1172.75, VanBlarcom: 1) asserted the three prison priors were invalid; 2) asked the court to strike the weapons enhancement; and 3) asked the court to resentence him to the low term of three years on the voluntary manslaughter conviction. The trial court struck the three prison priors but denied the remaining requests.

VanBlarcom asserts the trial court abused its discretion by relying on his prior stipulated plea, considering aggravating factors not stipulated to or proved beyond a reasonable doubt, and failing to adequately consider mitigating circumstances. The People assert section 1172.75, subdivision (d)(4) allowed the trial court to reimpose the upper term without making any additional findings. We acknowledge the split in authority on this issue, but agree with People's interpretation of section 1172.75, subdivision (d)(4). Finding no other errors, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

VanBlarcom admitted to bludgeoning the victim—a man that he lived with—to death with a birdbath. He alleged the man had molested him when he was a teen, that he had been drinking heavily, in part because of the associated trauma, and that he had reacted when the victim made sexual advances towards him.

The People charged VanBlarcom with murder. VanBlarcom pled guilty to one count of voluntary manslaughter, admitted that he personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1), and admitted three prison priors under section 667.5. As part of the plea, the People agreed to a stipulated sentence of 15 years in prison, comprised of the

---

[1]     Further unspecified statutory references are to the Penal Code.

2

upper term of 11 years for the voluntary manslaughter conviction, one year for the enhancement, and one year each for the three prison priors. On May 3, 2019, the trial court sentenced VanBlarcom to 15 years in prison, pursuant to the agreement of the parties.

In 2021, the Legislature enacted Senate Bill No. 483 (2021-2022 Reg. Sess.) to add former section 1171.1, later renumbered as section 1172.75 (Stats. 2022, ch. 58, § 12), to the Penal Code. (Stats. 2021, ch. 728, §§ 1, 3.) Effective January 1, 2022, and subject to exceptions not relevant here, section 1172.75 declared sentence enhancements imposed under section 667.5, subdivision (b) to be legally invalid and provided a mechanism for resentencing affected individuals. (§ 1172.75, subds. (a)–(c).) This change applied to VanBlarcom and entitled him to a full resentencing hearing.

In his motion for resentencing, VanBlarcom asked the court to strike the three one-year prison priors as no longer valid; to strike the one-year weapons enhancement in light of the mitigating factor of the childhood trauma he suffered related to the offense; and to reduce the sentence on the voluntary manslaughter conviction to the low term of three years based on changes to section 1170, subdivision (b)(2), (6).

The People opposed the motion. They noted that VanBlarcom was sentenced in accordance with his plea agreement and asserted that lowering his sentence would not be in the interest of justice and would, instead, present a threat to public safety. Addressing the upper term sentence on the voluntary manslaughter conviction, the People asserted the phrase: "Unless the court originally imposed the upper term" in section 1172.75, subdivision (d)(4) permitted the trial court to reimpose the upper term without needing to rely on aggravating factors that were either stipulated to or proven beyond a reasonable doubt. In addition, they asserted that, under section 1170,

3

subdivision (d)(3), the trial court could rely on a certified record of conviction to establish several aggravating factors, such as unsatisfactory performance on probation or parole, and numerous prior convictions of increasing seriousness.

The trial court struck the three enhancements imposed under section 667.5, subdivision (b). It then turned to "whether the court should exercise its discretion to further reduce the sentenc[e]." The court began by noting that VanBlarcom "received a substantial benefit in a plea bargain in which he pled guilty to manslaughter and agreed to the aggravated term" of 15 years, and "has already received a significant benefit in reducing the sentence that he bargained for from 15 years to 12 years."

The court continued, "In looking at the totality of the circumstances here . . . the defendant does have a significant prior criminal history of increasing seriousness that led to the commission of the homicide in this case." The court also noted that it was "also significant that [VanBlarcom] indicated at the time that he had no remorse for his actions." The court concluded that it was "not in the furtherance of justice to resentence the defendant to any lesser term for the reasons indicated and for the additional reason that this was a negotiated plea agreement." The court then clarified, "The primary basis for the Court's decision is that [VanBlarcom's] prior criminal history of increasing seriousness and lack of remorse indicates that it would not be . . . in the furtherance of justice to reduce the sentencing and that an earlier release would endanger public safety."

Finally, the court noted that as to the aggravated upper term for manslaughter, it would "be bound now in a consideration for resentencing by the new guidelines," such that "the aggravated term could only be imposed if there were aggravated circumstances that were alleged and that were found

4

to be true or there was a stipulation to the aggravated term." It continued, "Here, there was a stipulation to the aggravated term by way of a plea bargain in which the defendant agreed to plead guilty and agreed to the aggravated term in exchange for reducing the charge from an indeterminate life term for murder to a determinate term for manslaughter." The court therefore stated that it would decline to resentence VanBlarcom further.

Defense counsel asked to be heard, and the court permitted argument. Counsel asked the court to consider facts and circumstances after the plea, as well as a report concerning the childhood trauma that VanBlarcom suffered at the hands of the victim, which was directly related to the crime. As to the plea agreement, counsel argued that VanBlarcom did not stipulate to any aggravating factors or circumstances, and that the plea alone did not constitute such a stipulation.

The court acknowledged the report and that the author had found VanBlarcom's statements about the abuse to be credible. The court stated, "So I agree that it is a significant factor that weighs on the issue of future dangerousness. But when I consider and balance that against all of the other factors that I have discussed, I still think that the defendant does still pose a significant danger to public safety, and it is not in the further of justice to grant the petition for resentencing."

The court entered a new abstract of judgment striking the three one-year enhancements and sentencing VanBlarcom to an aggregate term of 12 years.

VanBlarcom filed a timely notice of appeal.

## II.    DISCUSSION

VanBlarcom asserts the trial court erred by misinterpreting sections 1170 and 1172.75, and by improperly relying on aggravating factors that

5

were not pled or proved beyond a reasonable doubt in declining to grant any further reduction in his sentence.

## A. Relevant Resentencing Amendments

Effective January 1, 2022, new section 1172.75 declares that certain one-year sentence enhancements that were imposed prior to January 1, 2020 pursuant to former section 667.5, subdivision (b) are legally invalid, and provides a mechanism for resentencing individuals serving judgments that include one or more of those enhancements. (§ 1172.75, subds. (a)–(c).)

Pursuant to section 1172.75, subdivision (b), the Secretary of the Department of Corrections and Rehabilitation and the administrators for each county jail "shall identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)," and provide certain information about those individuals to the sentencing court. Upon receiving this information, the sentencing court "shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a). If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)

Section 1172.75, subdivision (d) specifies that the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (*Id.*, subd. (d)(1).) In addition, the resentencing court shall consider "any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).) Courts may consider "postconviction factors" such as the defendant's record of discipline and/or rehabilitation

6

while incarcerated, evidence that age, time served, and/or diminished physical condition have reduced the defendant's risk for future violence, and evidence that circumstances have changed such that continued incarceration is no longer in the interest of justice. (*Id.*, subd. (d)(3).)

Two "other changes in the law" are relevant here. Also effective January 1, 2022, the Legislature amended section 1170, subdivision (b) to make the middle term the presumptive determinate sentence. (*People v. Lynch* (2024) 16 Cal.5th 730, 742 (*Lynch*).) Under the amended statute, courts may not impose an upper term sentence unless aggravating circumstances justify that term and any facts underlying the circumstance, "have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2); *Lynch*, at p. 742.) However, courts "may consider the defendant's prior convictions . . . based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Current section 1172.75, subdivision (d)(4) addresses the presumptive middle term set forth in section 1170 and states: "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(4), italics added.)

Finally, the Legislature "amended sections 667 and 1385 to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes." (*People v. David Gonzalez* (2024) 103 Cal.App.5th 215, 221 (*David Gonzalez*).) Under new subdivision (c)(1) of

7

section 1385, the court 'shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.' " (*David Gonzalez,* at p. 221.) "Under [section 1385,] subdivision (c)(2), in exercising its discretion, 'the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' (§ 1385, subd. (c)(2).)" (*David Gonzalez,* at p. 221.)

### B. The Trial Court Did Not Abuse Its Discretion

Here, the trial court's initial comment that there "was a stipulation to the aggravated term by way of a plea bargain," suggests that the court may have initially misunderstood the requirements of section 1170, subdivision (b). Section 1170, subdivision (b) requires that the *facts* underlying any aggravating circumstance that the court relies on in imposing a sentence exceeding the middle term must be stipulated to or proven beyond a reasonable doubt. It does not permit, or provide a mechanism for, a defendant to stipulate to an upper term itself. The People do not contend otherwise.

However, that does not mean that the prior stipulation to the upper term has no impact in resentencing. As noted, current section 1172.75, subdivision (d)(4) provides that "[u]*nless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term . . . ." (Italics added.)

In *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*), the court determined, based on the plain meaning of the italicized phrase, that "it is evident the Legislature intended the new burden

8

of proof amendments to section 1170, subdivision (b) apply *only* if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing.  Section 1172.75, subdivision (d)(4) is, therefore, an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing." (*Brannon-Thompson,* at pp. 466–467, italics added.)

The court noted that the defendant argued that section 1172.75, subdivision (d)(4) should be read to create "two [independent] requirements for imposing the upper term at resentencing:  (1) the upper term must have been previously imposed and (2) the aggravating factors must be established beyond a reasonable doubt." (*Brannon-Thompson, supra,* 104 Cal.App.5th at p. 467.)  The court found the unambiguous language of the statute did not support such a reading and that it was up to the Legislature to change the statute if that is what they intended. (*Id.* at p. 467, fn. 3.)  Finally, the court noted that the defendant had suggested the court's reading would trigger constitutional equal protection issues but that the defendant had not sufficiently developed the argument.  (*Id.* at p. 467.)

A few months later, a different court reached the opposite conclusion in *People v. Ulysses Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*).  The court acknowledged that the plain language of section 1172.75, subdivision (d)(4) could be read as it was in *Brannon-Thompson* but concluded that it could also be read to "simply *restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term." (*Gonzalez,* at p. 329.)  Under this alternate interpretation, "a defendant [who previously received the upper term] would be eligible for the upper term but could not receive it in the absence of

9

aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact." (*Ibid*.)

The court went on to reject the reading of the court in *Brannon-Thompson* based primarily on perceived constitutional issues. The court explained the *Brannon-Thompson* interpretation "would potentially result in the statute impermissibly exempting defendants who previously received upper term sentences from the rule that eligibility for any upper term sentence depends on 'facts that have been established consistently with Sixth Amendment principles.' " (*Gonzalez, supra,* 107 Cal.App.5th at p. 329.)

The *Gonzalez* court noted that in *Lynch, supra,* 16 Cal.5th 730, the California Supreme Court held that " 'a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established.' " (*Gonzalez, supra,* 107 Cal.App.5th at pp. 326–327, citing *Lynch,* at p. 768.) Accordingly, the *Gonzalez* court concluded that "reading an exemption into section 1172.75, subdivision (d)(4), in the manner suggested by [*Brannon-Thompson*], and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*." (*Gonzalez*, at p. 330.) To avoid that issue, the court adopted the defendant's proposed interpretation of the opening clause of section 1172.75, subdivision (d)(4) as "simply *restrict*[*ing*] *the scope of defendants eligible to receive the upper term*." (*Gonzalez*, at p. 330.)

The California Supreme Court has since granted review in another case to decide whether section 1172.75, subdivision (d)(4) creates an exception to section 1172.75, subdivision (b)(2)'s heightened factfinding requirement.

10

(*People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted
May 14, 2025, S289903).)

Until we receive further guidance from our high court on this issue, we
decline to follow *Gonzalez* and instead agree with interpretation of section
1172.75, subdivision (d)(4) set forth in *Brannon-Thompson*. In our view, the
*Brannon-Thompson* court's reading of section 1172.75, subdivision (d)(4) does
not conflict with the Sixth Amendment or *Lynch*. *Lynch* was decided in the
context of retroactively applying the amendments to section 1170, which
restrict the trial court's ability to impose an upper term (i.e. a greater term)
to sentences that were not yet final, in the absence of certain factual findings.
(*Lynch, supra,* 16 Cal.5th at p. 748.) In that context, the court found, based
in part on its prior holding in *Apprendi v. New Jersey* (2000) 530 U.S. 466,
that it would be a sixth amendment violation for the court to rely on facts
underlying aggravating factors that were not stipulated to or found true
beyond a reasonable doubt. (*Lynch,* at pp. 748–749.)

However, it is worth noting, as the court did in *Lynch*, that the prior
statute permitted imposition of an upper term *without* requiring reliance on
specific factual findings, or aggravating circumstances based on such factual
findings, and did not violate the Sixth Amendment. (See *Lynch, supra,*
16 Cal.5th at p. 747 [between 2007 and 2022, the choice between the lower,
upper, and middle term fell within the sound discretion of the trial court];
*Cunningham v. California* (2007) 549 U.S. 270, 293–294 [states must choose
between sound discretion and sentencing guidelines that require factual
findings by stipulation or jury].)

Section 1172.75 does not raise the same Sixth Amendment concerns for
two reasons. First, it permits trial courts to *reduce*, as opposed to increase,
criminal sentences that were originally lawfully imposed. (See *Erlinger*

11

*v. U.S.* (2024) 602 U.S. 821, 835, fn. 1 ["Nor, of course, does *Apprendi* prohibit legislatures from enacting reforms authorizing judges to *lower* sentences based on their own factfinding."]; *People v. Perez* (2018) 4 Cal.5th 1055, 1064 [the Sixth Amendment "does not prohibit trial courts from relying on facts not found by a jury" where "a factual finding that results in resentencing ineligibility does not increase the petitioner's sentence; it simply leaves the original sentence intact"].) Second, as noted, section 1172.75, subdivision (d)(4) creates a statutory exception to the factfinding requirements of section 1170, subdivision (b). "[W]hat the Sixth Amendment requires is necessarily informed by what the state statutory scheme requires," and in this context, the statute does not require the trial court to make any factual findings implicating the Sixth Amendment. (*Lynch, supra,* 16 Cal.5th at p. 756.)

Here, the trial court noted that it would typically "be bound now in a consideration for resentencing by the new guidelines," but also that "there was a stipulation to the aggravated term by way of a plea bargain in which the defendant agreed to plead guilty and agreed to the aggravated term in exchange for reducing the charge from an indeterminate life term for murder to a determinate term for manslaughter." The court did consider the mitigating factor of VanBlarcom's childhood trauma but concluded that VanBlarcom did still pose "a significant danger to public safety, and it [was] not in the further of justice to grant the petition for resentencing."

Under the interpretation of section 1172.75, subdivision (d)(4) set forth in *Brannon-Thompson*, the court was permitted to reimpose the upper term (or decline to reduce it) without relying on factual findings that were either stipulated to or proven beyond a reasonable doubt. Practically speaking, this makes sense. VanBlarcom entered his plea, and the court sentenced him based on that plea, at a time in which the sentencing decision fell within the

12

trial court's sound discretion, and the law did not require reliance on factual findings as to the underlying aggravating factors.  Accordingly, there would be no reason to make or record such findings, or a stipulation thereto, as part of the plea.  For these reasons, we find no abuse of discretion in the trial court's decision not to reduce the upper term on the manslaughter conviction.

Finally, we likewise find no abuse in the trial court's exercise of its discretion not to strike the weapons enhancement.  Under section 1385, the court was required to afford great weight to the mitigating factor of the childhood abuse, *unless* it found, as it did, that dismissal would endanger public safety.  (§ 1385, subd. (c)(2); *David Gonzalez, supra,* 103 Cal.App.5th at p. 221.)  Here, as the court noted, VanBlarcom had already received a significantly reduced sentence, as compared to the potential indeterminate life sentence he was facing.  Notwithstanding the unfortunate circumstances of the prior abuse, we cannot say that it was an abuse of discretion for the court to determine that further reducing VanBlarcom's sentence was not in the furtherance of justice or that it would endanger public safety.

## III.   DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

13